2003 SD 143

**Stephen CORDELL, Petitioner and Appellant,**

v.

**Douglas WEBER, Warden, South Dakota State Penitentiary, Respondent and Appellee.**

No. 22742.

Supreme Court of South Dakota.

Considered on Briefs Aug. 25, 2003.

Decided Dec. 10, 2003.

Michael B. Thompson, Sioux Falls, SD, for petitioner and appellant.

Lawrence E. Long, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, SD, for respondent and appellee.

ZINTER, Justice.

[¶ 1.] Stephen Cordell appeals the denial of a writ of habeas corpus. He alleges that his trial counsel was constitutionally ineffective. We affirm the trial court's denial of habeas corpus relief.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Cordell was married to Rachel "Shelly" Brandriet in 1980. The couple had three children during their marriage. They also built a house together near Watertown.

[¶ 3.] Shelly left Cordell on April 2, 1998 and filed for divorce. The divorce was highly contested. Cordell threatened to burn the house if it was awarded to Shelly. The children and marital home were, however, awarded to Shelly. Proposed findings of fact and conclusions of law were mailed to Cordell and received by him on October 25, 1999. That same day, October 25, 1999, the house and a shed were severely damaged by fire.

[¶ 4.] A witness saw a white car, similar to the one driven by Cordell, leaving the area of the house. Immediately thereafter, the witness saw a fire in the shed and house. The fire department responded and observed evidence of arson in the shed and house. There was an odor of petroleum, heavy smoke damage, areas of petroleum like liquid on the floors, heavy concentrations of fire in certain areas, but no evidence that the shed fire had spread to the house.

[¶ 5.] Upon request of law enforcement, Cordell contacted the sheriff's office that same afternoon and voluntarily submitted to an interview. After waiving his *Miranda* rights, Cordell admitted: that he had received the divorce papers that morning; that he was alone in the house at the time; that he knew of no one else who would have wanted to burn the house; and, that he left the house that morning. The interviewing officer also noticed the smell of petroleum on Cordell. Cordell, however, denied any involvement in the fire.

[¶ 6.] During the course of the interview, the officer determined that Cordell was potentially suicidal and appeared depressed. As a result, Cordell was placed on a mental health hold that evening. Pursuant to jail policy, Cordell was required to change into a jail jumpsuit. Cordell's clothing was removed and placed into a locker by jail personnel. Cordell was subsequently interviewed by a medical doctor and held for an emergency mental health commitment.

[¶ 7.] The clothing Cordell wore was seized by law enforcement the next morning, October 26, 1999, while Cordell was waiting for transportation to the Human Services Center for the involuntary commitment. The clothing was sent to a state laboratory for testing. Trial counsel objected to the introduction of the test results, however, the objection was overruled because counsel had failed to raise the issue in a pre-trial motion to suppress.[1] The test results indicated the possible presence of an accelerant, but no identifiable ignitable liquids.

[¶ 8.] Cordell was ultimately convicted by a jury of second-degree arson and third-degree arson. He failed to file a direct appeal. He did, however, seek a writ of habeas corpus on the ground that his trial counsel was ineffective in: (1) failing to effectively challenge the clothing test results, and (2) failing to suppress Cordell's statements made during the sheriff's office interview. Following an evidentiary hearing, the habeas court denied relief.

## STANDARD OF REVIEW/BURDEN OF PROOF

Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in [the attorney's] presentation of the defense at trial. This court, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.

*Rodriguez v. Weber*, 2000 SD 128, ¶ 28, 617 N.W.2d 132, 142 (citations omitted). Cordell's burden for establishing an ineffective assistance claim is also well established.

In order for [petitioner] to obtain habeas relief on the grounds of ineffective assistance of counsel, he must pass the two-part test for such a claim. *See Davi v. Class*, 2000 SD 30, ¶ 16, 609 N.W.2d 107, 112 (recognizing the test for ineffective assistance of counsel as presented in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Under this test, [petitioner] must first show that trial counsel erred so seriously that 'counsel was not functioning as counsel guaranteed by the Constitution.' *Id.* Second, he must

---

1. SDCL 23A–8–3 requires that suppression motions be raised prior to trial.

prove that counsel's error prejudiced him so that he was deprived of a fair trial. *Id.* Prejudice, under the *Strickland* test, requires us to ask: 'But for counsel's unprofessional errors' would the result at trial have been different? *Weddell v. Weber*, 2000 SD 3, ¶ 25, 604 N.W.2d 274, 281 (citation omitted). To find prejudice, the answer must be that there is a reasonable probability of a different outcome. 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *See id.* (quoting *Loop v. Class*, 1996 SD 107, ¶ 14, 554 N.W.2d 189, 192 [(1996)]).

*Knecht v. Weber*, 2002 SD 21, ¶ 5, 640 N.W.2d 491, 495. With respect to ineffective counsel on Fourth Amendment claims:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Luna v. Solem*, 411 N.W.2d 656, 659 (S.D. 1987).

### ISSUE ONE

[¶ 9.] **Whether trial counsel was ineffective in failing to contest the search and seizure of Cordell's clothing at a time when the search could be challenged.**

[¶ 10.] Cordell contends that his trial counsel was ineffective because he failed to effectively challenge the search and seizure of the clothing. Although Cordell acknowledges that a search of clothing incident to a lawful arrest is generally valid, he contends that a search incident to an involuntary mental commitment violates the Fourth Amendment.

[¶ 11.] The habeas court specifically found that, although Cordell was in custody on an involuntary commitment, he was not under arrest. Nevertheless, the habeas court upheld the search under the rules applicable to a search incident to arrest. The habeas court also concluded that Cordell suffered no prejudice in light of the overwhelming evidence establishing his guilt.

[¶ 12.] The Fourth Amendment of the Constitution guarantees citizens protection from unreasonable searches and seizures by government actors. U.S. Const. amend. IV, S.D. Const., art. VI, § 11. Under these provisions "[n]ormally, police officers must obtain a warrant based on probable cause issued by a judge in order to seize someone's property." *State v. Christensen*, 2003 SD 64, ¶ 11, 663 N.W.2d 691, 694. In the event a warrantless search is conducted, it is the State's burden to show that the search was permissible. *Id.* ¶ 12. However, "[a]n individual must have a reasonable expectation of privacy in the place searched or the article seized before the Fourth Amendment will apply." *Id.* ¶ 11. "[T]his privacy interest is determined by a two-prong test: (1) whether the defendant has exhibited an actual subjective expectation of privacy and (2) whether society is willing to honor this expectation as being reasonable." *State v. Lowther*, 434 N.W.2d 747, 754 (S.D.1989). This case focuses on the second prong: whether Cordell's expectation of privacy in his clothing in a police locker is objectively reasonable.

[¶ 13.] The State argues that the seizure and subsequent chemical search of Cordell's clothing was reasonable because it was incident to protective custody. We begin the inquiry by first examining the basis for permitting warrantless searches incident to arrest.

[¶ 14.] In *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the Supreme Court determined that a prisoner's clothing may be searched and seized without a warrant if it is incident to lawful arrest. This holding was based on the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained. *Id.* at 809, 94 S.Ct. 1234. However, the *Edwards* holding is clearly predicated upon a lawful arrest. *Id.* at 808, 94 S.Ct. 1234.

> ... [U]nder the Fourth Amendment, ... a defendant has no reasonable expectation of privacy in property jail personnel seize from a defendant upon arrival *after a lawful arrest.*

*State v. Cheatam*, 112 Wash.App. 778, 51 P.3d 138, 141 (2002) (emphasis added). So also, this Court has determined that items taken from a defendant's clothing *at the time of a lawful arrest* are admissible. *State v. Spells*, 88 S.D. 259, 218 N.W.2d 210, 211 (S.D.1974).

[¶ 15.] The State attempts to extend *Edwards* and *Spells,* arguing that custody for an involuntary commitment is sufficiently similar to an arrest to permit a search incident to custody. This argument requires a consideration of two issues: (1) whether a person subject to an involuntary commitment can be lawfully searched; and, if so, (2) to what extent items seized can be subsequently searched without a warrant.

[¶ 16.] In considering the first issue, the Utah Court of Appeals held that "a search incident to protective custody, just as a search incident to lawful arrest, is allowed under the Constitution." *State v. Collins,* 53 P.3d 953, 956 (Utah App.2002)

*cert denied State v. Collins,* 63 P.3d 104 (Utah 2003). In *Collins,* the defendant was placed in protective custody at the request of a medical professional after Collins acted in a manner that could have led to serious injury of others. *Id.* at 957. Before Collins was placed in protective custody, the officers conducted a pat-down search and found a knife sheath and methamphetamine on his person. *Id.* at 955. The Utah Court determined that the protective custody statutes implied an authorization to conduct a search incident to taking the person into custody as a protective measure. *Id.* at 957. The Utah Court recognized that "in a civil protective custody search, the purpose is to protect not only the peace officer but also the mentally ill individual and others." *Id.* Consequently, the protective search and subsequent seizure were reasonable and not violative of the Fourth Amendment. *Id. Collins,* therefore, supports the proposition that a protective search is constitutionally permissible when an individual is placed in protective custody.[2]

[¶ 17.] South Dakota's involuntary commitment statutes also recognize the need to provide protection to the committed person and the public. SDCL ch. 27A–10. Therefore, when placed in protective custody, a person's reasonable expectation of privacy is curtailed for these purposes. A contrary conclusion would frustrate the legislative intent of preserving the safety of the public and the individual taken into protective custody. We agree that under the *Collins* rationale, a reasonable and limited protective search incident to involuntary commitment is permitted in order to protect the mentally ill individual and that person's custodians. A

---

**2.** However, a fair reading of *Collins* does not support the proposition that such a search is without constraint. That search was made for a protective purpose. Therefore, it was consistent with the purpose of the protective detention.

person placed in protective custody, while not having the same diminished expectation of privacy as an arrestee, does have a lesser expectation of privacy than the average citizen on the street.

[¶ 18.] Moreover, a limited search under these circumstances is consistent with South Dakota law permitting inventory searches after a person is taken into custody. This Court has previously recognized that when a person or property is taken into custody "a good faith, noninvestigatory inventory search" is permissible. *State v. Hejhal*, 438 N.W.2d 820, 821 (S.D.1989) (quoting *State v. Flittie*, 425 N.W.2d 1, 5–6 (S.D.1988)). "A so-called inventory search is not an independent legal concept but rather an incidental administrative step." *Id.* This administrative step is supported by a need to (1) safeguard property; (2) insulate the police from groundless claims that property was not protected; and, (3) secure the detention facility by preventing introduction of weapons or contraband. *See id.*; *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

[¶ 19.] Other courts addressing this issue also hold that the rationale for inventory searches applies equally to criminal arrestees and civil detainees. *State v. Friend*, 711 S.W.2d 508 (Mo.1986); *State v. Toto*, 123 N.H. 619, 465 A.2d 894 (N.H. 1983); *State v. Johnson*, 122 N.M. 713, 930 P.2d 1165 (Ct.App.1996). These "[i]nventory searches have been upheld not because of their relationship to an arrest, but because of their relationship to legitimate custodial purposes." *Friend*, 711 S.W.2d at 510.

[¶ 20.] In this case, Cordell's clothing was removed for a legitimate custodial purpose. It was then placed in a locker by jail personnel. We therefore conclude that the initial seizure of Cordell's clothing was lawful because it was a reasonable administrative step following his detention. *See United States v. Gallop*, 606 F.2d 836, 839 (9th Cir.1979) (holding that the reasons for a police inventory, which were outlined in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, apply to property taken under police protection when the owner of the property is 'detained' under police custody but not arrested.).

[¶ 21.] We now turn to the second issue to determine whether the police could extend the seizure of the clothing to a search for chemical traces by having the clothing sent to the state crime lab for testing. In addressing this issue, the North Dakota Supreme Court concluded that, when a detainee's wallet was taken pursuant to an inventory search, it was reasonable for officers to submit a suspect piece of paper contained therein for chemical testing if "there is probable cause to associate the property with criminal activity." *State v. Gelvin*, 318 N.W.2d 302, 307 (N.D.1982) *cert. denied Gelvin v. North Dakota*, 459 U.S. 987, 103 S.Ct. 341, 74 L.Ed.2d 383 (U.S.N.D.1982). It so held even though that detainee was not under arrest when the items were inventoried. *Id.* In approving the chemical testing, the North Dakota Supreme Court held that an officer who lawfully has possession of the property may extend the search when supported by probable cause. *Id.* However, possession by means of the inventory search will not permit further testing absent that probable cause. *Id. See also State v. Lane*, 328 N.C. 598, 403 S.E.2d 267, 276 (1991) (admitting into evidence results or tests performed on gun lawfully seized without a warrant when the gun was obtained by consent prior to arrest and probable cause existed for further testing: "Since the pistol and ammunition were already lawfully in the possession of the police officer, he was not required to

return it to the owner if there is probable cause to retain it."). We agree with these authorities and hold that a detainee's items, which are seized pursuant to a protective inventory search and are already in the possession of the police, may be the subject of further search and testing if the extended search is supported by probable cause to associate the property with criminal activity.

[¶ 22.] However, we also recognize that in a non-arrest situation, courts more diligently guard the detained person's privacy interest in their personal items. *See e.g. State v. Joyce,* 229 Conn. 10, 639 A.2d 1007 (1994). In *Joyce,* the Connecticut Supreme Court determined that chemical testing of clothing that was in police custody for safekeeping was not permissible. *Id.* at 1016. Joyce was discovered burned and his clothing had to be removed during the course of his medical treatment. *Id.* at 1009. The clothing was collected for safekeeping pursuant to law enforcement's "community caretaking function" when Joyce was taken to the hospital.[3] *Id.* at 1010. After Joyce became a suspect in an arson, the police transmitted his clothing to the state forensic lab for further testing. *Id.* The Connecticut Supreme Court determined that "the defendant had a reasonable expectation of privacy in the invisible and odorless chemicals present in his clothing." *Id.* at 1015. Moreover, because there were no

facts establishing probable cause for the chemical testing of Joyce's clothing,[4] the search was found impermissible without a warrant. *Id.* at 1017.

[¶ 23.] Thus, absent probable cause to believe that the clothing is associated with criminal activity, a civil detainee (as compared to a person under arrest) has a higher level of expectation of privacy in their personal items for purposes of Fourth Amendment analysis. However, that privacy interest does not extend to items which are, on their face, associated with criminal activity. In order to safeguard the privacy interest of such civil detainees, the appropriate limitation is that enunciated by the North Dakota Supreme Court: *i.e.,* whether the officer had probable cause to associate the property with criminal activity.

> We do not believe it is necessary for an officer to be certain beyond a doubt that a substance is contraband before he may seize it for testing. The seizure of property by an officer who lawfully views it is permissible if there is 'probable cause to associate the property with criminal activity.'

*Gelvin,* 318 N.W.2d at 307, 308 (quoting *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980)).

---

3. "Custody pursuant to a community caretaking function is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *State v. Bernier,* 246 Conn. 63, 717 A.2d 652, 659 n. 12 (1998).

4. The *Joyce* court specifically indicated that the record contained no evidence that the *defendant's clothing* emitted any odor detectable by the human sense of smell. *Id.* at 1014. The special writing's omission of this critical fact leads it to the erroneous conclusion that the facts in *Joyce* are similar to the facts we

have before us. *Infra* ¶ 39. Unlike *Joyce,* here the police had evidence that *Cordell's clothing* smelled of petroleum: they smelled it in the interview. Therefore, unlike *Joyce,* they not only had probable cause to believe that Cordell had committed arson, *but also that the clothing* in the locker was evidence of that crime. Because these officers "had probable cause to associate the property with criminal activity," this case is governed by *Gelvin,* 318 N.W.2d at 307, 308, rather than *Joyce.*

[¶ 24.] The facts in Cordell's case established probable cause to believe that the clothing contained evidence of an accelerant or other chemical and was evidence of a crime.[5] The interrogating officer testified that during his interview with Cordell, he smelled the presence of a chemical similar to the one at the site of the fire "resembling that to be of a fuel smell of some sort." This fact alone distinguishes *Joyce* and meets the test of *Gelvin*. In addition, these officers were aware that Cordell had received the divorce papers that morning, he had previously threatened to burn the home, he was present at the home that morning, and a vehicle similar to Cordell's was seen leaving the scene of the fire. Under all of these circumstances, the officer had probable cause to believe that the clothing contained chemicals associated with the fire. As a result, the subsequent testing was reasonable on these facts.[6] Consequently, Cordell failed to establish ineffective assistance of counsel because he would not have prevailed on a pretrial motion to suppress.

[¶ 25.] We finally note even if we were to assume that counsel erred in failing to challenge the seizure of the clothing prior to trial, we agree with the habeas court that Cordell is not entitled to habeas relief as he has not established prejudice. To obtain habeas relief, Cordell must establish "a reasonable probability that, but for the unprofessional errors of counsel, the result of the proceeding would have been different." *Weddell*, 2000 SD 3 ¶ 25, 604 N.W.2d at 281. Here, there was no prejudice because the other evidence overwhelmingly established Cordell's guilt.

ISSUE TWO

[¶ 26.] **Whether trial counsel was ineffective in failing to challenge Cordell's waiver of his *Miranda* rights and subsequent statements to law enforcement.**

[¶ 27.] Cordell also argues that because he was placed on a mental hold after his interview with law enforcement, his waiver of *Miranda* rights and subsequent statements were not voluntary. He contends that trial counsel was constitutionally ineffective in failing to challenge those statements.[7] However, Cordell does not contend that law enforcement engaged in any coercion in securing the statements. Rather, he only argues that his mental state, as evidenced by the involuntary commitment, prevented a knowing and intelligent waiver of *Miranda* rights and rendered his statements involuntary.

[¶ 28.] This Court recently clarified the burden of establishing a waiver of *Miranda* rights. "The State must prove a waiver of *Miranda* rights only by a preponderance of the evidence." *State v. Tuttle*, 2002 SD 94, ¶ 8, 650 N.W.2d 20, 26

---

5. We do not address whether exigent circumstances existed to justify the warrantless seizure of Cordell's clothing. State has not set forth any evidence concerning rates of dissipation or the evanescent nature of accelerants to demonstrate a real danger that such evidence would be lost. *See State v. Engesser*, 2003 SD 47, 661 N.W.2d 739 (holding a blood draw is permissible when exigent circumstances and probable cause exist without formal arrest). *See also State v. Buchholz*, 1999 SD 110, ¶ 18, 598 N.W.2d 899, 903; *State v. Hanson*, 1999 SD 9, ¶ 28, 588 N.W.2d 885, 891.

6. It is important to note that there are no allegations by Cordell that the mental health detention was unsupported in fact, or a mere pretext to obtain possession of the clothing. On the contrary, the decision to hold Cordell was supported by a medical finding.

7. Counsel testified that he specifically considered a challenge, but chose not to proceed because during the interview Cordell steadfastly denied any involvement in the fire.

(citing *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 485 (1986)). The waiver must be knowing, intelligent and voluntary. *Id.* ¶ 7. In determining if a waiver is valid, "a court should consider a defendant's age, experience, intelligence, and background, including familiarity with the criminal justice system, as well as physical and mental condition." *Id.* Here, Cordell only argues that his mental condition undermined the voluntariness of his waiver and subsequent statements.

[¶ 29.] "Of course, a waiver must at a minimum be 'voluntary' to be effective against an accused." *Connelly*, 479 U.S. at 169, 107 S.Ct. 515. In *Connelly*, the United States Supreme Court addressed a claim of an involuntary *Miranda* waiver because Connelly was "following the voice of God" in making his statements confessing to a murder. *Id.* at 161, 107 S.Ct. 515. Psychiatric testimony also revealed that Connelly was suffering chronic schizophrenia and was in a psychotic state around the time of his *Miranda* waiver and confession. *Id.* The Colorado Supreme Court suppressed the statements reasoning that, although police engaged in no overreaching, the statements were not a product of "rational intellect and a free will" and therefore were involuntary. *Id.* at 162, 107 S.Ct. 515. In reversing this reasoning, the United States Supreme Court held:

> We think that the Supreme Court of Colorado erred in importing into this area of constitutional law notions of 'free will' that have no place there. There is obviously no reason to require more in the way of 'voluntariness' inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment on which Miranda was based, is governmental coercion. Indeed, the Fifth Amendment privilege is

> not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.' The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word. (The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. The record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements. The defendant was not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit. The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in *Miranda*.).

*Id.* at 169–170, 107 S.Ct. 515 (citations omitted).

[¶ 30.] This rationale is applicable here. Cordell presented no facts, and concedes that none exist, that the police acted in a coercive or overreaching manner in obtaining the *Miranda* waiver or subsequent statements. Moreover, the videotaped interview reveals that Cordell was coherent and there was no improper physical or psychological pressure. Therefore, there is no basis for habeas relief on this issue.

[¶ 31.] The trial court's denial of habeas corpus relief is affirmed.

[¶ 32.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 33.] SABERS and MEIERHENRY, Justices, concur in result.

SABERS, Justice (concurring in result).

[¶ 34.] I join Justice Meierhenry's special writing for the reasons stated therein.

There simply was no reason for the officers to search and seize Cordell's clothing without first obtaining a warrant.

[¶ 35.] I concur in the result of the majority opinion because there was probable cause for a warrant and therefore no prejudice has been shown in this habeas corpus proceeding.

MEIERHENRY, Justice (concurring in result).

[¶ 36.] I write specially on Issue I.

[¶ 37.] I agree with the majority that the initial seizure of Cordell's clothing when the officers took him into protective custody on a mental hold is not in violation of his constitutional rights. However, the subsequent chemical analysis at the State Crime Laboratory was a search without a warrant and does not fall within a recognized exception to the warrant requirements. The majority opinion cites *State v. Joyce*, 229 Conn. 10, 639 A.2d 1007 (1994) in which the issue was whether the police who were lawfully in custodial possession of a suspect's clothing were required under the constitution to get a search warrant before having the clothing tested for chemicals. The *Joyce* court analyzed the constitutionality of the search as follows:

> We must determine (1) whether there was a reasonable expectation of privacy in the clothing; (2) whether the testing of the clothing at the state laboratory constituted a search; and (3) if so, whether the circumstances of this case fall within a recognized exception to the warrant requirement. For purposes of our analysis, we assume that the police had probable cause at the time of the chemical test to believe that the defendant started the fire.

*Id.* at 1012–1013.

[¶ 38.] The *Joyce* court found the suspect had an expectation of privacy and concluded that submitting his clothes to chemical analysis was a search. The court further determined the circumstances did not fall within any of the exceptions allowing a warrantless search. The *Joyce* court recognized that the officers may have had probable cause to suspect Joyce but held that the officers needed a search warrant to test the clothing. The court held "that the chemical analysis of [Joyce's] clothing should have been suppressed" because it was "the result of a warrantless search unsupported by exigent circumstances or any other recognized exception to the warrant requirement." *Id.* at 1016–1017.

[¶ 39.] The facts in *Joyce* are similar to the facts we have before us in this case. In *Joyce*, the officers were holding burned clothing removed from the defendant when he was transported to the hospital. Here the officers held Cordell's clothes when he was transported to a mental hospital. In both cases, the officers had probable cause to suspect the defendant of committing arson before submitting the clothing to chemical testing.

[¶ 40.] I would adopt the reasoning of the *Joyce* court. It is important to note that Cordell was not under arrest nor had he been charged with a crime. The officers who questioned him were concerned that he was suicidal and decided to hold him for his own protection. A citizen placed on a mental hold certainly has an expectation of privacy in his own clothing. Here, the officers took his clothing before he was transported to the Human Services Center. They placed the clothes in a locker. There the clothes remained until they were sent to the Lab sometime later. The officers had ample time to get a warrant to test the clothing. The search does not fall within any of the exceptions to the constitutional requirement of obtaining a warrant.

[¶ 41.]   I would find that Cordell's counsel was ineffective for failing to seek suppression of the clothing.   However, I cannot conclude based upon the record that Cordell was prejudiced.   The trial court concluded that the state had "presented overwhelming evidence other than the clothing" showing Cordell's guilt.   I agree with the trial court that there was overwhelming evidence supporting Cordell's conviction without the chemical test of the clothing.   I agree with the majority in result and would deny Cordell's petition.