#25584-rev & rem-GAS

**2012 S.D. 19**

## IN THE SUPREME COURT

### OF THE

### STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                             Plaintiff and Appellee,

v.

ELMER WAYNE ZAHN, JR.,                             Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE TONY PORTRA
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


THOMAS M. TOBIN of
Tonner, Tobin and King, LLP
Aberdeen, South Dakota                  Attorneys for defendant
                                        and appellant.

\* \* \* \*

ARGUED ON MARCH 23, 2011

OPINION FILED **03/14/12**

#25584

SEVERSON, Justice

[¶1.]　　　　Without obtaining a search warrant, police attached a global positioning system (GPS) device to Elmer Wayne Zahn Jr.'s vehicle. The GPS device enabled officers to track and record the speed, time, direction, and geographic location of Zahn's vehicle within five to ten feet for nearly a month. Police used the information they gathered to obtain a search warrant for two storage units that Zahn frequently visited. Officers recovered drug paraphernalia and approximately one pound of marijuana from a freezer in one of the storage units. Before trial, the trial court denied Zahn's motion to suppress the evidence that the officers discovered during the execution of the search warrant. Zahn appeals his conviction of several drug possession charges, arguing that the trial court erred by denying his motion to suppress. We reverse.

## Background

[¶2.]　　　　Zahn and his wife, Ranee, lived in Gettysburg, South Dakota. In June 2008, Ranee passed away while visiting her daughter, Katie Circle Eagle, in Aberdeen. Because Ranee was not in the care of a physician when she died, police were called to Circle Eagle's residence to investigate the death. Zahn was present when the officers arrived but left before they interviewed him.

[¶3.]　　　　As part of the death investigation, the officers searched the bedroom where Ranee died. They found a large, brown suitcase in a bedroom closet. The suitcase contained a digital scale and approximately 120 quart-sized plastic containers. A strong odor of raw marijuana emanated from several of the containers. The officers also found $8,890 cash in a nylon shoulder bag in one

- 1 -

corner of the bedroom.  A drug dog later alerted to the cash as having the odor of marijuana or some narcotic.  Their suspicions aroused, the officers attempted to contact Zahn, but they were unable to do so.

[¶4.]    In November 2008, Zahn was arrested for driving while intoxicated.  The arresting officers searched Zahn's vehicle.  They found a black duffel bag in the backseat that contained an unmarked pill bottle filled with a green, leafy substance.  Tests later confirmed that the substance was marijuana.  The officers also recovered a large amount of cash from the duffel bag, from a purse in the cargo area of the vehicle, and from Zahn's person.  In total, the officers discovered nearly $10,000 cash.  Zahn was charged with and pleaded guilty to driving under the influence, possession of two ounces or less of marijuana, and possession of drug paraphernalia.

[¶5.]    On March 3, 2009, Tanner Jondahl, a detective with the Aberdeen Police Department, attached a GPS device to the undercarriage of Zahn's vehicle while it was parked in the private parking lot of an apartment complex.  The GPS device was attached to Zahn's vehicle with a magnet and did not interfere with the operation of his vehicle.  Because the GPS device was battery-powered, it did not draw power from Zahn's vehicle.  For twenty-six days, it continuously transmitted the geographic location of Zahn's vehicle, enabling officers to pinpoint his location within five to ten feet, monitor his speed, time, and direction, and detect non-movement.  A computer at the Brown County Sheriff's Office recorded the movements of Zahn's vehicle.

[¶6.]    Using the GPS device, Detective Jondahl tracked Zahn's movements for twenty-six days in March 2009.  He observed that Zahn's vehicle traveled to a

storage unit at Plaza Rental five times and a storage unit at Store-It four times. The visits to the storage units generally lasted only a few minutes. Detective Jondahl later confirmed that a Plaza Rental storage unit was rented to Ranee and that a Store-It storage unit was rented to Alan Zahn, Zahn's brother. Detective Jondahl represented that, based on his training and experience, he believed that Zahn kept controlled substances in the storage units and was involved in drug distribution.

[¶7.] On March 29, 2009, Zahn traveled to Gettysburg, South Dakota. Because Zahn was out on bond at the time, he was not permitted to leave Brown County. Officers used the GPS device to determine that Zahn left Brown County, and Zahn was arrested for the bond violation when he returned to Aberdeen. A search of his person revealed approximately $2,000 cash.

[¶8.] Later that day, Detective Jondahl submitted an affidavit in support of a search warrant for the Plaza Rental storage unit, the Store-It storage unit, and Zahn's person. A judge signed the search warrant, and Detective Jondahl, along with several other officers, executed the warrant. During the search of the Store-It storage unit, a drug dog alerted to a freezer that was hidden from view by a wall of empty cardboard boxes. In the freezer, the officers discovered two jars filled with nearly one ounce of a finely-ground, green substance that emitted a strong odor of raw marijuana. A large suitcase in the freezer contained five four-ounce plastic bags of a green, leafy substance. Tests later confirmed that the substance in both the jars and the plastic bags was marijuana. The freezer contained several other items, including a glass pipe, three empty plastic bags, and several unused plastic

containers. Various boxes and cardboard tubes bearing Zahn's name were also recovered from the Store-It storage unit. No evidence was recovered from the Plaza Rental storage unit. A urine sample taken from Zahn that day tested negative for marijuana ingestion.

[¶9.]    In April 2009, a Brown County grand jury indicted Zahn on one count of possession with the intent to distribute one pound or more of marijuana and one count of possession of one to ten pounds of marijuana. Additionally, Zahn was charged with possession of drug paraphernalia. Zahn filed a motion to suppress the evidence obtained through the use of the GPS device. The trial court denied the motion after a hearing on the matter. The case proceeded to a court trial in February 2010, and Zahn was convicted of all charges. Zahn appeals.

## Standard of Review

[¶10.]    Our standard of review of motions to suppress is well settled. "A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo." *State v. Wright*, 2010 S.D. 91, ¶ 8, 791 N.W.2d 791, 794 (quoting *State v. Thunder*, 2010 S.D. 3, ¶ 11, 777 N.W.2d 373, 377). "The trial court's factual findings are reviewed under the clearly erroneous standard" of review. *Id.* (quoting *Thunder*, 2010 S.D. 3, ¶ 11, 777 N.W.2d at 377). However, "[o]nce the facts have been determined . . . the application of a legal standard to those facts is a question of law reviewed de novo." *Id.* (quoting *Thunder*, 2010 S.D. 3, ¶ 11, 777 N.W.2d at 377).

## Analysis and Decision

[¶11.] Zahn challenges the use of the GPS device to monitor his activities for nearly a month under the Fourth Amendment to the United States Constitution and Article VI, § 11, of the South Dakota Constitution. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, Article VI, § 11, of the South Dakota Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.

[¶12.] While Zahn challenges the use of the GPS device to monitor his activities under Article VI, § 11, of the South Dakota Constitution, he has not asserted a basis to distinguish the protections that the South Dakota Constitution provides from those that the United States Constitution provides. *See State v. Kottman*, 2005 S.D. 116, ¶ 13, 707 N.W.2d 114, 120 ("Counsel advocating a separate constitutional interpretation 'must demonstrate that the text, history, or purpose of a South Dakota constitutional provision supports a different interpretation from the corresponding federal provision.'" (quoting *State v. Schwartz*, 2004 S.D. 123, ¶ 57, 689 N.W.2d 430, 445)). We thus decide this case on federal constitutional principles and will not address the question of whether the South Dakota Constitution affords South Dakotans greater protection against the use of GPS devices to monitor their

activities over an extended period of time. *See State v. Opperman*, 247 N.W.2d 673, 675 (S.D. 1976) (recognizing that "this [C]ourt has the power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution").

*Is the Use of a GPS Device a Search?*

[¶13.] In the recent case of *United States v. Jones*, the United States Supreme Court addressed the issue of whether the attachment of a GPS device to an individual's vehicle, and the subsequent use of the device to track the vehicle's movements, constitutes a search under the Fourth Amendment. 565 U.S. __, 132 S. Ct. 945, __ L. Ed. 2d __ (2012). In *Jones*, the Government applied for and was granted a search warrant authorizing it to install a GPS tracking device on a vehicle that was registered to Jones's wife. *Id*. at __, 132 S. Ct. at 948. One day after the warrant expired, the Government installed the device.[1] *Id*. The Government then used the device to track the vehicle's movements for twenty-eight days. *Id*.

[¶14.] The Government later secured an indictment charging Jones and other alleged co-conspirators with several crimes, including conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base. *Id*. Prior to trial, Jones moved to suppress the evidence the Government obtained through the use of

---

1. The warrant authorized the Government to install the GPS device in the District of Columbia within ten days of the issuance of the warrant. *Id*. The Government installed the GPS device eleven days after the warrant was issued. At the time the device was installed, the vehicle was located in Maryland. *Id*.

the GPS device. *Id.* The District Court held that the data obtained from the GPS device while the vehicle was on public streets was admissible because "a person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* (quoting *United States v. Jones*, 451 F. Supp. 2d 71, 88 (D.D.C. 2006)). The United States Court of Appeals for the District of Columbia Circuit reversed, holding that the admission of the evidence obtained by the Government through the warrantless use of a GPS device violated the Fourth Amendment. *United States v. Maynard*, 615 F.3d 544, 568 (D.C. Cir. 2010).

[¶15.] The United States Supreme Court granted certiorari and affirmed the holding of the D.C. Circuit. *Jones*, 565 U.S. at __, 132 S. Ct. at 954. However, in doing so, the Court did not apply the Fourth Amendment analysis first introduced by Justice Harlan in his concurrence in *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), which centers on whether an individual has a "reasonable expectation of privacy" in the area searched. *See Thunder*, 2010 S.D. 3, ¶ 16, 777 N.W.2d at 378 (applying the *Katz* "reasonable expectation of privacy" test). Instead, the Court applied a "physical trespass" test to determine whether the Government's conduct constituted a Fourth Amendment search.

[¶16.] The Court observed that the Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Jones,* 565 U. S. at __, 132 S. Ct. at 949. The Court went on to state, "It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." *Id.* (citing *United States v. Chadwick,* 433 U.S. 1, 12,

97 S. Ct. 2476, 2484, 53 L. Ed. 2d 538 (1977)). Thus, the Court unequivocally held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Id*.

[¶17.]    In *Jones*, the Court acknowledged two separate tests for identifying a Fourth Amendment search: the "physical trespass test" and the *Katz* "reasonable expectation of privacy" test. Justice Scalia, writing for the majority, determined it was unnecessary to reach the question of whether Jones had a "reasonable expectation of privacy" in the vehicle or in the whole of his movements on public roads. The majority explained:

> The Government contends that the Harlan standard shows that no search occurred here, since Jones had no "reasonable expectation of privacy" in the area of the Jeep accessed by Government agents (its underbody) and in the locations of the Jeep on the public roads, which were visible to all. But we need not address the Government's contentions, because Jones's Fourth Amendment rights do not rise or fall with the *Katz* formulation. At bottom, we must "assur[e] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted." As explained, for most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ("persons, houses, papers, and effects") it enumerates. *Katz* did not repudiate that understanding.

*Id*. at __, 132 S. Ct. at 950 (internal citations omitted).

[¶18.]    However, Justice Alito wrote a concurring opinion, which was joined by Justices Ginsburg, Breyer, and Kagan. *Id*. at __, 132 S. Ct. at 957 (Alito, J., concurring). Justice Alito characterized the majority's holding as "unwise," stating, "It strains the language of the Fourth Amendment; it has little if any support in current Fourth Amendment case law; and it is highly artificial." *Id*. at __, 132 S. Ct. at 958. Justice Alito reasoned that the case should be analyzed "by asking whether

[Jones's] reasonable expectations of privacy were violated by the long-term monitoring of the movements of the vehicle he drove." *Id.* Without identifying the specific point at which the surveillance became a Fourth Amendment search, Justice Alito concluded that the continual monitoring of Jones's movements during a four-week period violated Jones's reasonable expectations of privacy. Justice Alito explained, "In this case, for four weeks, law enforcement agents tracked every movement that [Jones] made in the vehicle he was driving. We need not identify with precision the point at which the tracking of this vehicle became a search, for the line was surely crossed before the 4-week mark."[2] *Id.* at __, 132 S. Ct. at 964.

[¶19.] In this case, law enforcement attached a GPS device to Zahn's vehicle. It then monitored Zahn's movements for twenty-six days. In accordance with the majority's opinion in *Jones*, we hold that law enforcement's installation of a GPS device on Zahn's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a Fourth Amendment search under the "physical trespass test."

---

2. Justice Sotomayor joined the majority but wrote a separate concurring opinion. *Id.* at __, 132 S. Ct. at 954 (Sotomayor, J., concurring). She agreed with the majority that the Government conducted a Fourth Amendment search when it physically invaded Jones's personal property to gather information. *Id.* Justice Sotomayor thus found it unnecessary to address the issue of whether Jones's reasonable expectations of privacy had been violated. Nonetheless, Justice Sotomayor indicated that she agreed with Justice Alito's conclusion that, "at the very least, 'longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.'" *Id.* at __, 132 S. Ct. at 955. Thus, at least five Justices reasoned that prolonged GPS monitoring violates an individual's reasonable expectation of privacy.

[¶20.]	Law enforcement's actions also constituted a search under the *Katz* "reasonable expectation of privacy" test.[3]  This Court has stated, "A two-part test determines whether an individual has a reasonable expectation of privacy" in a particular area.  *Thunder*, 2010 S.D. 3, ¶ 16, 777 N.W.2d at 378 (citing *Cordell v. Weber*, 2003 S.D. 143, ¶ 12, 673 N.W.2d 49, 53).  "First, we consider whether [an individual] exhibited an actual subjective expectation of privacy in the area searched."  *Id.* (citing *Cordell*, 2003 S.D. 143, ¶ 12, 673 N.W.2d at 53).  "Second, we consider whether society is prepared to recognize that expectation of privacy as reasonable."  *Id.* (citing *Cordell*, 2003 S.D. 143, ¶ 12, 673 N.W.2d at 53).  "Whether [an individual] has a legitimate expectation of privacy in [an area] is determined on a 'case-by-case basis, considering the facts of each particular situation.'"[4]  *Id.* (quoting *State v. Hess*, 2004 S.D. 60, ¶ 17, 680 N.W.2d 314, 322).

---

3.	We find it appropriate to address this issue because, in arguing this case, both parties focused on the application of the *Katz* "reasonable expectation of privacy" test.  At the time this case was argued, the United States Supreme Court had not yet decided *Jones*.

4.	Prior to *Jones*, courts that were faced with the issue of whether the use of a GPS device to monitor an individual's movements was a Fourth Amendment search applied the *Katz* "reasonable expectation of privacy" test.  For example, two federal circuit courts held that the use of a GPS device to monitor an individual's activities on public roads did not amount to a Fourth Amendment search under the *Katz* "reasonable expectation of privacy" test.  *See United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011), *vacated*, 2012 WL 538289; *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010), *vacated*, 2012 WL 53827.  One federal appellate court reached the opposite conclusion.  *See Maynard*, 615 F.3d 544, *aff'd, Jones*, 565 U.S. __, 132 S. Ct. 945.

	A number of state courts held that the use of a GPS device to monitor an individual's activities was not a Fourth Amendment search.  *See Devega v. State*, 689 S.E.2d 293 (Ga. 2010); *Stone v. State*, 941 A.2d 1238 (Md. Ct. Spec.

(continued . . .)

[¶21.] We first address whether Zahn had a subjective expectation of privacy in the whole of his movements for nearly a month. Ordinarily, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz,* 389 U.S. at 351, 88 S. Ct. at 511 (citing *Lewis v. United States*, 385 U.S. 206, 210, 87 S. Ct. 424, 427, 17 L. Ed. 2d 312 (1966); *United States v. Lee*, 274 U.S. 559, 563, 47 S. Ct. 746, 748, 71 L. Ed. 1202 (1927)). "But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* (citing *Rios v. United States*, 364 U.S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960)) (citation omitted).

[¶22.] In this case, the State argues that Zahn could not have had a subjective expectation of privacy in his movements because he voluntarily exposed his movements to the public. We disagree. While a reasonable person understands that his movements on a single journey are conveyed to the public, he expects that those individual movements will remain "disconnected and anonymous." *Maynard*, 615 F.3d at 563 (citation omitted). Indeed, the likelihood that another person would observe the whole of Zahn's movements for nearly a month "is not just remote, it is

---

(. . . continued)

App. 2008); *Osburn v. State*, 44 P.3d 523 (Nev. 2002); *People v. Gant*, 802 N.Y.S.2d 839 (N.Y. Crim. Ct. 2005); *State v. Johnson*, 944 N.E.2d 270 (Ohio Ct. App. 2010), *appeal docketed*, No. 2011-0033 (Ohio 2011); *Foltz v. Commonwealth*, 698 S.E.2d 281 (Va. Ct. App. 2010), *aff'd en banc*, 706 S.E.2d 914 (2011); *State v. Sveum*, 769 N.W.2d 53 (Wis. Ct. App. 2009).

Three state courts held the warrantless use of a GPS device to monitor an individual's movement was impermissible under their respective state constitutions. *See People v. Weaver*, 909 N.E.2d 1195 (N.Y. 2009); *State v. Campbell*, 759 P.2d 1040 (Or. 1988); *State v. Jackson*, 76 P.3d 217 (Wash. 2003).

essentially nil." *Id.* at 560. The prolonged use of a GPS device in this case enabled officers to determine Zahn's speed, time, direction, and geographic location within five to ten feet at any time. It also enabled officers to use the sum of the recorded information to discover patterns in the whole of Zahn's movements for twenty-six days. The prolonged GPS surveillance of Zahn's vehicle revealed more than just the movements of the vehicle on public roads; it revealed an intimate picture of Zahn's life and habits. We thus believe that Zahn had a subjective expectation of privacy in the whole of his movements. This subjective expectation of privacy was not defeated because Zahn's individual movements were exposed to the public.

[¶23.] We next consider whether Zahn's expectation of privacy in the whole of his movements for nearly a month was reasonable. After all, his personal desire for privacy alone, no matter how earnestly held, does not trigger the protections of the Fourth Amendment. *Smith v. Maryland*, 442 U.S. 735, 740-41, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220 (1979) (citations omitted).

[¶24.] The State argues that, under *United States v. Knotts*, 460 U.S. 276, 103 S. Ct. 1081, 75 L. Ed. 2d 55 (1983), Zahn could not have possessed a reasonable expectation of privacy in his movements on public roads. In *Knotts*, the United States Supreme Court considered whether the use of a tracking device to monitor an individual's activities during a single journey amounted to a Fourth Amendment search. *Id.* at 285, 103 S. Ct. at 1087. The Court held that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 281, 103 S. Ct. at 1085. The

Court noted that police efficiency does not equate with unconstitutionality. *Id.* at 284, 103 S. Ct. at 1086.

[¶25.] By today's standards, the beeper used in *Knotts* was a rudimentary tracking device. It enabled investigators to maintain visual contact with Knotts's vehicle on a single journey, but it could not indicate with any degree of accuracy where Knotts's vehicle was located. *Id.* at 278, 103 S. Ct. at 1083. And it certainly could not record Knotts's movements over an extended period of time. The Court in *Knotts* expressly declined to address whether twenty-four hour surveillance over an extended period of time is a Fourth Amendment search. The Court stated, "[I]f such dragnet type law enforcement practices as [Knotts] envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." *Id.* at 284, 103 S. Ct. at 1086.

[¶26.] In *Jones*, the majority did not reach the question of whether the use of a GPS device to monitor an individual's activities for an extended period of time violates an individual's "reasonable expectations of privacy." *Jones*, 565 U.S. at __, 132 S. Ct. at 950. But in his concurrence, Justice Alito recognized that

> longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy. For such offenses, society's expectation has been that law enforcement agents and others would not – and indeed, in the main, simply could not – secretly monitor and catalogue every single movement of an individual's car for a very long period.

*Id.* at __, 132 S. Ct. at 964 (Alito, J., concurring). Justice Sotomayor expressly stated in her concurrence, "I agree with Justice Alito that, at the very least, 'longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.'" *Id.* at __, 132 S. Ct. at 955 (Sotomayor, J., concurring).

[¶27.] Technology has advanced exponentially since the United States Supreme Court decided *Knotts* twenty-nine years ago. Current GPS technology is uniquely intrusive in the wealth of highly-detailed information it gathers. *See* Renee McDonald Hutchins, *Tied Up in Knotts? GPS Technology and the Fourth Amendment*, 55 U.C.L.A. L. Rev. 409, 456-57 (2007). The GPS device used in this case continuously transmitted the geographic location of Zahn's vehicle to a computer at the Brown County Sheriff's Department. It enabled officers to not only determine his speed, direction, and geographic location within five to ten feet at any time, but to also use the recorded information to discover patterns in the whole of his movements for nearly a month.

[¶28.] When the use of a GPS device enables police to gather a wealth of highly-detailed information about an individual's life over an extended period of time, its use violates an expectation of privacy that society is prepared to recognize as reasonable.[5] The use of a GPS device to monitor Zahn's activities for twenty-six

---

5. We do not believe that the popularity of GPS technology constitutes a surrender of personal privacy. *Weaver*, 909 N.E.2d at 1200. In his concurrence in *Jones*, Justice Alito accepted this proposition in concluding that the use of a GPS device to monitor of Jones's movements during a four-week period violated Jones's reasonable expectations of privacy. *Jones*, 565 U.S. at __, 132 S. Ct. at 964 (Alito, J., concurring). However, Justice Alito indicated that future advances in technology may influence society's expectation of privacy. He explained,

> the *Katz* test rests on the assumption that this hypothetical reasonable person has a well-developed and stable set of privacy expectations. But technology can change those expectations. Dramatic technological change may lead to periods in which popular expectations are in flux and may ultimately produce significant changes in popular attitudes. New technology may provide increased convenience or security at the expense of

(continued . . .)

days was therefore a Fourth Amendment search under the *Katz* "reasonable expectation of privacy" test.

*Does the Fourth Amendment Require a Warrant to Use a GPS Device?*

[¶29.] Detective Jondahl did not obtain a search warrant before he used the GPS device to monitor Zahn's activities for nearly a month. "[A] warrantless search and seizure is *per se* unreasonable" unless it falls within an exception to the warrant requirement. *State v. Sweedland*, 2006 S.D. 77, ¶ 14, 721 N.W.2d 409, 413 (quoting *State v. Luxem*, 324 N.W.2d 273, 279 (S.D. 1982)). "If a warrantless search or seizure is conducted, it is the State's burden to show that the entry into the protected area was justified." *Wright*, 2010 S.D. 91, ¶ 9, 791 N.W.2d at 794 (quoting *Thunder*, 2010 S.D. 3, ¶ 13, 777 N.W.2d at 378).

[¶30.] The United States Supreme Court has carved out a number of "well-delineated exceptions" to the warrant requirement. *Katz*, 389 U.S. at 357, 88 S. Ct. at 514. The Court has found that the presence of exigent circumstances excuses a warrantless search and that a warrantless search and seizure of an individual for the limited purpose of briefly investigating reasonably suspicious behavior is permissible. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Warden v. Hayden*, 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967). Consent searches, searches conducted incident to a valid arrest, automobile searches, and

---

(. . . continued)

> privacy, and many people may find the tradeoff worthwhile. And even if the public does not welcome the diminution of privacy that new technology entails, they may eventually reconcile themselves to this development as inevitable.

*Id.* at 962.

searches of items in plain view are also allowed without a warrant.[6] None of these

exceptions readily applies to the use of a GPS device to monitor an individual's

activities over an extended period of time.

[¶31.]    We thus hold that the attachment and use of a GPS device to monitor

an individual's activities over an extended period of time requires a search warrant.

Because the unfettered use of surveillance technology could fundamentally alter the

relationship between our government and its citizens, we require oversight by a

neutral magistrate. *Wright*, 2010 S.D. 91, ¶ 9, 791 N.W.2d at 794 (quoting

*Thunder*, 2010 S.D. 3, ¶ 13, 777 N.W.2d at 378). Thus, the warrantless attachment

and use of the GPS device to monitor Zahn's activities for nearly a month was

unlawful, and the evidence obtained through the use of the GPS device should be

suppressed.

[¶32.]    By our holding today, we do not deny police the ability to use this

valuable law enforcement tool. We recognize that police must be allowed to use

developing technology in the "often competitive enterprise of ferreting out crime."

*Sweedland*, 2006 S.D. 77, ¶ 22, 721 N.W.2d at 415 (quoting *Illinois v. Gates*, 462

U.S. 213, 240, 103 S. Ct. 2317, 2333, 76 L. Ed. 2d 527 (1983)). The Fourth

Amendment "cannot sensibly be read to mean that police [should] be no more

---

6.    *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (consent searches); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) (searches of items in plain view); *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969) (searches conducted incident to arrest); *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925) (automobile searches).

efficient in the twenty-first century than they were in the eighteenth" century.

*United States v. Garcia*, 474 F.3d 994, 998 (7th Cir. 2007), *cert. denied*, 552 U.S. 883, 128 S. Ct. 291, 169 L. Ed. 2d 140 (2007). But police must obtain a warrant before they attach and use a GPS device to monitor an individual's activities over an extended period of time.

[¶33.]     Our disposition of this case makes it unnecessary to address Zahn's additional challenges to this conviction.

[¶34.]     Reversed and remanded for additional proceedings.

[¶35.]     GILBERTSON, Chief Justice, and MEIERHENRY, Retired Justice, concur.

[¶36.]     KONENKAMP and ZINTER, Justices, concur with a writing.

ZINTER, Justice (concurring).

[¶37.]     The majority opinion in *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012), resolves a virtually identical case. Therefore, I join the Court's opinion insofar as it holds this was an unlawful search under *Jones's* physical trespass test. *See id.* at ___, 132 S. Ct. at 949 ("We hold that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" (footnote omitted)); *see supra* ¶¶ 15, 19. However, it must be pointed out that the majority[7] of

---

7.     Justice Sotomayor, the fifth vote, did suggest that GPS monitoring would impinge on expectations of privacy in some cases. *Jones*, 565 U.S. at ___, 132 S. Ct. at 955 (Sotomayor, J., concurring) ("I agree with Justice Alito that, at the very least, 'longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.'"). Nonetheless, Justice Sotomayor did

(continued . . .)

the Supreme Court expressly declined to adopt Justice Alito's concurrence arguing

for application of the *Katz* "reasonable expectation of privacy" test.  In fact, the

majority pointed out a number of problems in applying the reasonable expectation

of privacy test in this context.  The majority concluded that the Court would "have

to grapple with these 'vexing problems' in some future case where a classic

trespassory search is not involved and resort must be had to *Katz* analysis; but

there is no reason for rushing forward to resolve them here."  *Jones*, 565 U.S. at ___,

132 S. Ct. at 954.

[¶38.]     Because a majority of the Supreme Court expressly considered but

declined to apply the reasonable expectation of privacy test in *Jones*, I do not join

this Court's application of the reasonable expectation of privacy test in Zahn's case.

Because we are deciding this case under the federal Constitution, we should not

utilize a Fourth Amendment test that the majority of the Supreme Court has

expressly declined to apply.[8]  It is also unnecessary because–like the Supreme

---

(. . . continued)

> not apply the *Katz v. United States*, 389 U.S. 347, 360, 88 S. Ct. 507, 516, 19 L. Ed. 2d 576 (Harlan, J., concurring), reasonable expectation of privacy test in that month-long GPS monitoring case.  She indicated that technological advances would "affect" the *Katz* test in future cases.  *Jones*, 565 U.S. at ___, 132 S. Ct. at 955 (Sotomayor, J., concurring) ("[T]he same technological advances that have made possible nontrespassory surveillance techniques will also affect the *Katz* test by shaping the evolution of societal privacy expectations.").  Ultimately, Justice Sotomayor joined the majority, concluding that it was unnecessary to address the reasonable expectation of privacy test.  *Id.* at ___, 132 S. Ct. at 957.

8.     The Court today also uses the D.C. Circuit Court of Appeals' view of how *Katz's* reasonable expectation of privacy test (and in particular, the subjective expectation of privacy prong) invalidates prolonged use of GPS monitoring.  *See supra* ¶ 22 (citing *United States v. Maynard*, 615 F.3d 544, 563 (D.C. Cir.

(continued . . .)

Court–today's Court finds this use of a GPS to be an unlawful search under the physical trespass test. Concededly, this case was argued on the reasonable expectation of privacy test. But *Jones* was decided after oral argument, and "[t]he Court [should] not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S. Ct. 466, 483, 80 L. Ed. 688 (1936) (Brandeis, J., concurring). "[W]e should . . . adhere to a basic constitutional obligation by avoiding unnecessary decision of constitutional questions." *Morse v. Frederick*, 551 U.S. 393, 428, 127 S. Ct. 2618, 2640, 168 L. Ed. 2d 290 (2007). As Justice Sotomayor concluded in providing the fifth vote for the majority opinion in *Jones*, "[r]esolution of [the] difficult questions [regarding expectations of privacy was] . . . unnecessary . . . because the Government's physical intrusion . . . supplie[d] a narrower basis for decision." *Jones*, 565 U.S. at ___, 132 S. Ct. at 957.

[¶39.] KONENKAMP, Justice, joins this special writing.

---

(. . . continued)

> 2010)). But the D.C. Circuit Court of Appeals' decision in *Maynard* involved a joint appeal by both defendants Maynard and Jones, and the United States Supreme Court expressly declined to follow *Maynard's* application of the reasonable expectation of privacy test in prolonged GPS monitoring. *See Jones*, 565 U.S. at ___, 132 S. Ct. at 954. The Supreme Court noted that applying the *Katz* reasonable expectation of privacy test "leads us needlessly into additional thorny problems." *Id.*