SEVERSON, Justice.
[¶ 1.] Without obtaining a search warrant, police attached a global positioning system (GPS) device to Elmer Wayne Zahn, Jr.’s vehicle. The GPS device enabled officers to track and record the speed, time, direction, and geographic location of Zahn’s vehicle within five to ten feet for nearly a month. Police used the information they gathered to obtain a search warrant for two storage units that Zahn frequently visited. Officers recovered drug paraphernalia and approximately one pound of marijuana from a freezer in one of the storage units. Before trial, the trial court denied Zahn’s motion to suppress the evidence that the officers discovered during the execution of the search warrant. Zahn appeals his conviction of several drug possession charges, arguing that the trial court erred by denying his motion to suppress. We reverse.
Background
[¶ 2.] Zahn and his wife, Ranee, lived in Gettysburg, South Dakota. In June 2008, Ranee passed away while visiting her daughter, Katie Circle Eagle, in Aberdeen. Because Ranee was not in the care of a physician when she died, police were called to Circle Eagle’s residence to investigate the death. Zahn was present when the officers arrived but left before they interviewed him.
[¶ 3.] As part of the death investigation, the officers searched the bedroom where Ranee died. They found a large, brown suitcase in a bedroom closet. The suitcase contained a digital scale and approximately 120 quart-sized plastic containers. A strong odor of raw marijuana emanated from several of the containers. The officers also found $8,890 cash in a nylon shoulder bag in one corner of the bedroom. A drug dog later alerted to the cash as having the odor of marijuana or some narcotic. Their suspicions aroused, the officers attempted to contact Zahn, but they were unable to do so.
[¶ 4.] In November 2008, Zahn was arrested for driving while intoxicated. The arresting officers searched Zahn’s vehicle. They found a black duffel bag in the backseat that contained an unmarked pill bottle filled with a green, leafy substance. Tests later confirmed that the substance was marijuana. The officers also recovered a large amount of cash from the duffel bag, from a purse in the cargo area of the vehicle, and from Zahn’s person. In total, the officers discovered nearly $10,000 cash. Zahn was charged with and pleaded guilty to driving under the influence, possession of two ounces or less of marijuana, and possession of drug paraphernalia.
[¶ 5.] On March 3, 2009, Tanner Jon-dahl, a detective with the Aberdeen Police Department, attached a GPS device to the undercarriage of Zahn’s vehicle while it was parked in the private parking lot of an apartment complex. The GPS device was attached to Zahn’s vehicle with a magnet and did not interfere with the operation of his vehicle. Because the GPS device was battery-powered, it did not draw power from Zahn’s vehicle. For twenty-six days, it continuously transmitted the geographic location of Zahn’s vehicle, enabling officers *493 to pinpoint his location within five to ten feet, monitor his speed, time, and direction, and detect non-movement. A computer at the Brown County Sheriffs Office recorded the movements of Zahn’s vehicle.
[¶ 6.] Using the GPS device, Detective Jondahl tracked Zahn’s movements for twenty-six days in March 2009. He observed that Zahn’s vehicle traveled to a storage unit at Plaza Rental five times and a storage unit at Store-It four times. The visits to the storage units generally lasted only a few minutes. Detective Jondahl later confirmed that a Plaza Rental storage unit was rented to Ranee and that a Store-It storage unit was rented to Alan Zahn, Zahn’s brother. Detective Jondahl represented that, based on his training and experience, he believed that Zahn kept controlled substances in the storage units and was involved in drug distribution.
[¶ 7.] On March 29, 2009, Zahn traveled to Gettysburg, South Dakota. Because Zahn was out on bond at the time, he was not permitted to leave Brown County. Officers used the GPS device to determine that Zahn left Brown County, and Zahn was arrested for the bond violation when he returned to Aberdeen. A search of his person revealed approximately $2,000 cash.
[¶ 8.] Later that day, Detective Jon-dahl submitted an affidavit in support of a search warrant for the Plaza Rental storage unit, the Store-It storage unit, and Zahn’s person. A judge signed the search warrant, and Detective Jondahl, along with several other officers, executed the warrant. During the search of the Store-It storage unit, a drug dog alerted to a freezer that was hidden from view by a wall of empty cardboard boxes. In the freezer, the officers discovered two jars filled with nearly one ounce of a finely-ground, green substance that emitted a strong odor of raw marijuana. A large suitcase in the freezer contained five four-ounce plastic bags of a green, leafy substance. Tests later confirmed that the substance in both the jars and the plastic bags was marijuana. The freezer contained several other items, including a glass pipe, three empty plastic bags, and several unused plastic containers. Various boxes and cardboard tubes bearing Zahn’s name were also recovered from the Store-It storage unit. No evidence was recovered from the Plaza Rental storage unit. A urine sample taken from Zahn that day tested negative for marijuana ingestion.
[¶ 9.] In April 2009, a Brown County grand jury indicted Zahn on one count of possession with the intent to distribute one pound or more of marijuana and one count of possession of one to ten pounds of marijuana. Additionally, Zahn was charged with possession of drug paraphernalia.. Zahn filed a motion to suppress the evidence obtained through the use of the GPS device. The trial court denied the motion after a hearing on the matter. The case proceeded to a court trial in February 2010, and Zahn was convicted of all charges. Zahn appeals.
Standard of Review
[¶ 10.] Our standard of review of motions to suppress is well settled. “A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo.” State v. Wright, 2010 S.D. 91, ¶ 8, 791 N.W.2d 791, 794 (quoting State v. Thunder, 2010 S.D. 3, ¶ 11, 777 N.W.2d 373, 377). “The trial court’s factual findings are reviewed under the clearly erroneous standard” of review. Id. (quoting Thunder, 2010 S.D. 3, ¶ 11, 777 N.W.2d at 377). However, “[o]nce the facts have been determined ... the application of a legal standard to those facts is a question of law reviewed de novo.” Id. (quoting *494 Thunder, 2010 S.D. 3, ¶ 11, 777 N.W.2d at 377).
Analysis and Decision
[¶ 11.] Zahn challenges the use of the GPS device to monitor his activities for nearly a month under the Fourth Amendment to the United States Constitution and Article VI, § 11, of the South Dakota Constitution. The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing, the place to be searched, and the persons or things to be seized.
Similarly, Article VI, § 11, of the South Dakota Constitution provides:
The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.
[¶ 12.] While Zahn challenges the use of the GPS device to monitor his activities under Article VI, § 11, of the South Dakota Constitution, he has not asserted a basis to distinguish the protections that the South Dakota Constitution provides from those that the United States Constitution provides. See State v. Kottman, 2005 S.D. 116, ¶ 13, 707 N.W.2d 114, 120 (“Counsel advocating a separate constitutional interpretation ‘must demonstrate that the text, history, or purpose of a South Dakota constitutional provision supports a different interpretation from the corresponding federal provision.’ ” (quoting State v. Schwartz, 2004 S.D. 123, ¶ 57, 689 N.W.2d 430, 445)). We thus decide this case on federal constitutional principles and will not address the question of whether the South Dakota Constitution affords South Dakotans greater protection against the use of GPS devices to monitor their activities over an extended period of time. See State v. Opperman, 247 N.W.2d 673, 675 (S.D.1976) (recognizing that “this [C]ourt has the, power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution”).

Is the Use of a GPS Device a Search ?

[¶ 13.] In the recent case of United States v. Jones, the United States Supreme Court addressed the issue of whether the attachment of a GPS device to an individual’s vehicle, and the subsequent use of the device to track the vehicle’s movements, constitutes a search under the Fourth Amendment. 565 U.S. -, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). In Jones, the Government applied for and was granted a search warrant authorizing it to install a GPS tracking device on a vehicle that was registered to Jones’s wife. Id. at -, 132 S.Ct. at 948. One day after the warrant expired, the Government installed the device.[1] Id. The Government then used the device to track the vehicle’s movements for twenty-eight days. Id.
[¶ 14.] The Government later secured an indictment charging Jones and other alleged co-conspirators with several crimes, including conspiracy to distribute *495 and to possess with , intent to distribute cocaine and cocaine base. Id. Prior to trial, Jones moved to suppress the evidence the Government obtained through the use of the GPS device. Id. The District Court held that the data obtained from the GPS device while the vehicle was on public streets was admissible because “a person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.” Id. (quoting United States v. Jones, 451 F.Supp.2d 71, 88 (D.D.C.2006)). The United States Court of Appeals for the District of Columbia Circuit reversed, holding that the admission of the evidence obtained by the Government through the warrantless use of a GPS device violated the Fourth Amendment. United States v. Maynard, 615 F.3d 544, 568 (D.C.Cir.2010).
[¶ 15.] The United States Supreme Court granted certiorari and affirmed the holding of the D.C. Circuit. Jones, 565 U.S. at -, 132 S.Ct. at 954. However, in doing so, the Court did not apply the Fourth Amendment analysis first introduced by Justice Harlan in his concurrence in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which centers on whether an individual has a “reasonable expectation of privacy” in the area searched. See Thunder, 2010 S.D. 3, 1116, 777 N.W.2d at 378 (applying the Katz “reasonable expectation of privacy[5]’ test). Instead, the Court applied a “physical trespass” test to determine whether the Government’s conduct constituted a Fourth Amendment search.
[¶ 16.] The Court observed that the Fourth Amendment protects “the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” Jones, 565 U.S. at -, 132 S.Ct. at 949. The Court went on to state, “It is beyond dispute that a vehicle is an ‘effect’ as" that term is used in the Amendment.” Id. (citing United States v. Chadwick, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977)). Thus, the Court unequivocally held that “the Government’s installation of a GPS device on a target’s vehicle, and its use of that device to monitor the vehicle’s movements, constitutes a ‘search.’ ” Id.
[¶ 17.] In Jones, the Court acknowledged two separate tests for identifying a Fourth Amendment search: the “physical trespass test” and the Katz “reasonable expectation of privacy” test. Justice Sca-lia, writing for the majority, determined it was unnecessary to reach the question of whether Jones had a “reasonable expectation of privacy” in the vehicle or in the whole of his movements on public roads. The majority explained:
The Government contends that the Harlan standard shows that no search occurred here, since Jones had no “reasonable expectation of privacy” in the area of the Jeep accessed by Government agents (its underbody) and in the locations of the Jeep on the public roads, which were visible to all. But we need not address the Government’s contentions, because Jones’s Fourth Amendment rights do not rise or fall with the Katz formulation. At bottom, we must “assur[e] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.” As explained, for most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas (“persons, houses, papers, and effects”) it enumerates. Katz did not repudiate that understanding.
Id. at -, 132 S.Ct. at 950 (internal citations omitted).
[¶ 18.] However, Justice Alito wrote a concurring opinion, which was joined by *496 Justices Ginsburg, Breyer, and Kagan. Id. at -, 132 S.Ct. at 957 (Alito, J., concurring). Justice Alito characterized the majority’s holding as “unwise,” stating, “It strains the language of the Fourth Amendment; it has little if any support in current Fourth Amendment case law; and it is highly artificial.” Id. at -, 132 S.Ct. at 958. Justice Alito reasoned that the case should be analyzed “by asking whether [Jones’s] reasonable expectations of privacy were violated by the long-term monitoring of the movements of the vehicle he drove.” Id. Without identifying the specific point at which the surveillance became a Fourth Amendment search, Justice Alito concluded that the continual monitoring of Jones’s movements during a four-week period violated Jones’s reasonable expectations of privacy. Justice Alito explained, “In this case, for four weeks, law enforcement agents tracked every movement that [Jones] made in the vehicle he was driving. We need not identify with precision the point at which the tracking of this vehicle became a search, for the line was surely crossed before the 4-week mark.”[2] Id. at -, 132 S.Ct. at 964.
[¶ 19.] In this case, law enforcement attached a GPS device to Zahn’s vehicle. It then monitored Zahn’s movements for twenty-s& days. In accordance with the majority’s opinion in Jones, we hold that law enforcement’s installation of a GPS device on Zahn’s vehicle, and its use of that device to monitor the vehicle’s movements, constitutes a Fourth Amendment search under the “physical trespass test.”
[¶ 20.] Law enforcement’s actions also constituted a search under the Katz “reasonable expectation of privacy” test.[3] This Court has stated, “A two-part test determines whether an individual has a reasonable expectation of privacy” in a particular area. Thunder, 2010 S.D. 3, ¶ 16, 777 N.W.2d at 378 (citing Cordell v. Weber, 2003 S.D. 143, ¶ 12, 673 N.W.2d 49, 53). “First, we consider whether [an indi vidual] exhibited an actual subjective expectation of privacy in the area searched.” Id. (citing Cordell, 2003 S.D. 143, ¶ 12, 673 N.W.2d at 53). “Second, we consider whether society is prepared to recognize that expectation of privacy as reasonable.” Id. (citing Cordell, 2003 S.D. 143, ¶ 12, 673 N.W.2d at 53). ‘Whether [an individual] has a legitimate expectation of privacy in [an area] is determined on a ‘case-by-case basis, considering the facts of each particular situation.’ ”[4] Id. (quoting State v. Hess, 2004 S.D. 60, ¶ 17, 680 N.W.2d 314, 322).
*497 [¶21.] We first address whether Zahn had a subjective expectation of privacy in the whole of his movements for nearly a month. Ordinarily, “[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.” Katz, 389 U.S. at 351, 88 S.Ct. at 511 (citing Lewis v. United States, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966); United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202 (1927)). “But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.” Id. (citing Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960)) (citation omitted).
[¶ 22.] In this case, the State argues that Zahn could not have had a subjective expectation of privacy in his movements because he voluntarily exposed his movements to the public. We disagree. While a reasonable person understands that his movements on a single journey are conveyed to the public, he expects that those individual movements will remain “disconnected and anonymous.” Maynard, 615 F.3d at 563 (citation omitted). Indeed, the likelihood that another person would observe the whole of Zahn’s movements for nearly a month “is not just remote, it is essentially nil.” Id. at 560. The prolonged use of a GPS device in this case enabled officers to determine Zahn’s speed, time, direction, and geographic location within five to ten feet at any time. It also enabled officers to use the sum of the recorded information to discover patterns in the whole of Zahn’s movements for twenty-six days. The prolonged GPS surveillance of Zahn’s vehicle revealed more than just the movements of the vehicle on public roads; it revealed an intimate picture of Zahn’s life and habits. We thus believe that Zahn had a subjective expectation of privacy in the whole of his movements. This subjective expectation of privacy was not defeated because Zahn’s individual movements were exposed to the public.
[¶ 23.] We next consider whether Zahn’s expectation of privacy in the whole of his movements for nearly a month was reasonable. After all, his personal desire for privacy alone, no matter how earnestly held, does not trigger the protections of the Fourth Amendment. Smith v. Maryland, 442 U.S. 735, 740-41, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (citations omitted).
*498 [¶ 24.] The State argues that, under United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), Zahn could not have possessed a reasonable expectation of privacy in his movements on public roads. In Knotts, the United States Supreme Court considered whether the use of a tracking device to monitor an individual’s activities during a single journey amounted to a Fourth Amendment search. Id. at 285, 103 S.Ct. at 1087. The Court held that “[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.” Id. at 281, 103 S.Ct. at 1085. The Court noted that police efficiency does not equate with unconstitutionality. Id. at 284, 103 S.Ct. at 1086.
[¶ 25.] By today’s standards, the beeper used in Knotts was a rudimentary tracking device. It enabled investigators to maintain visual contact with Knotts’s vehicle on a single journey, but it could not indicate with any degree of accuracy where Knotts’s vehicle was located. Id. at 278, 103 S.Ct. at 1083. And it certainly could not record Knotts’s movements over an extended period of time. The Court in Knotts expressly declined to address whether twenty-four hour surveillance over an extended period of time is a Fourth Amendment search. The Court stated, “[I]f such dragnet type law enforcement practices as [Knotts] envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable.” Id. at 284, 103 S.Ct. at 1086.
[¶ 26.] In Jones, the majority did not reach the question of whether the use of a GPS device to monitor an individual’s activities for an extended period of time violates an, individual’s “reasonable expectations of privacy.” Jones, 565 U.S. at -, 132 S.Ct. at 950. But in his concurrence, Justice Alito recognized that
longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy. For such offenses, society’s expectation has been that law enforcement agents and others would not — and indeed, in the main, simply could not — secretly monitor and cat-alogue every single movement of an individual’s car for a veiy long period.
Id. at -, 132 S.Ct. at 964 (Alito, J., concurring). Justice Sotomayor expressly stated in her concurrence, “I agree with Justice Alito that, at the very least, ‘longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.’ ” Id. at -, 132 S.Ct. at 955 (Sotomayor, J., concurring).
[¶ 27.] Technology has advanced exponentially since the United States Supreme Court decided Knotts twenty-nine years ago. Current GPS technology is uniquely intrusive in the wealth of highly-detailed information it gathers. See Renee McDonald Hutchins, Tied Up in Knotts? GPS Technology and the Fourth Amendment, 55 U.C.L.A. L.Rev. 409, 456-57 (2007). The GPS device used in this case continuously transmitted the geographic location of Zahn’s vehicle to a computer at the Brown County Sheriffs Department. It enabled officers to not only determine his speed, direction, and geographic location within five to ten feet at any time, but to also use the recorded information to discover patterns in the whole of his movements for nearly a month.
[¶ 28.] When the use of a GPS device enables police to gather a wealth of highly-detailed information about an individual’s life over an extended period of time, its use violates an expectation of privacy that society is prepared to recognize as reason *499 able.[5] The use of a GPS device to monitor Zahn’s activities for twenty-six days was therefore a Fourth Amendment search under the Katz “reasonable expectation of privacy” test.
Does the Fourth Amendment Require a Warrant to Use a GPS Device ?
[¶ 29.] Detective Jondahl did not obtain a search warrant before he used the GPS device to monitor Zahn’s activities for nearly a month. “[A] warrantless search and seizure is per se unreasonable” unless it falls within an exception to the warrant requirement. State v. Sweedland, 2006 S.D. 77, ¶ 14, 721 N.W.2d 409, 413 (quoting State v. Luxem, 324 N.W.2d 273, 279 (S.D.1982)). “If a warrantless search or seizure is conducted, it is the State’s burden to show that the entry into the protected area was justified.” Wright, 2010 S.D. 91, ¶ 9, 791 N.W.2d at 794 (quoting Thunder, 2010 S.D. 3, ¶ 13, 777 N.W.2d at 378).
[¶ 30.] The United States Supreme Court has carved out a number of “well-delineated exceptions” to the warrant requirement. Katz, 389 U.S. at 357, 88 S.Ct. at 514. The Court has found that the presence of exigent circumstances excuses a warrantless search and that a war-rantless search and seizure of an individual for the limited purpose of briefly investigating reasonably suspicious behavior is permissible. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Consent searches, searches conducted incident to a valid arrest, automobile searches, and searches of items in plain view are also allowed without a warrant.[6] None of these exceptions readily applies to the use of a GPS device to monitor an individual’s activities over an extended period of time.
[¶ 31.] We thus hold that the attachment and use of a GPS device to monitor an individual’s activities over an extended period of time requires a search warrant. Because the unfettered use of surveillance technology could fundamentally alter the relationship between our government and its citizens, we require oversight by a neutral magistrate. Wright, 2010 S.D. 91, ¶ 9, 791 N.W.2d at 794 (quoting Thunder, 2010 S.D. 3, ¶ 13, 777 N.W.2d at 378). Thus, the warrantless attachment and use of the GPS device to monitor *500 Zahn’s activities for nearly a month was unlawful, and the evidence obtained through the use of the GPS device should be suppressed.
[¶ 32.] By our holding today, we do not deny police the ability to use this valuable law enforcement tool. We recognize that police must be allowed to use developing technology in the “often competitive enterprise of ferreting out crime.” Sweedland, 2006 S.D. 77, ¶ 22, 721. N.W.2d at 415 (quoting Illinois v. Gates, 462 U.S. 213, 240, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983)). The Fourth Amendment “cannot sensibly be read to mean that police [should] be no more efficient in the twenty-first century than they were .in the eighteenth” century. United States v. Garcia, 474 F.3d 994, 998 (7th Cir.2007), cert. denied, 552 U.S. 883, 128 S.Ct. 291, 169 L.Ed.2d 140 (2007). But police must obtain a warrant before they attach and use a GPS -device to monitor an individual’s activities over an extended period of time.
[¶ 33.] Our disposition of this case makes it unnecessary to address Zahn’s additional challenges to this conviction.
[¶ 34.] Reversed and remanded for additional proceedings.
[¶ 35.] GILBERTSON, Chief Justice, and MEIERHENRY, Retired Justice, concur.
[¶ 36.] KONENKAMP and ZINTER, Justices, concur with a writing.

. The warrant authorized the Government to install the GPS device in the District of Columbia within ten days of the issuance of the warrant. Id. The Government installed the GPS device eleven days after the warrant was issued. At the time the device was installed, the vehicle was located in Maryland. Id.

.Justice Sotomayor joined the majority but wrote a separate concurring opinion. Id. at -, 132 S.Ct. at 954 (Sotomayor, J., concurring). She agreed with the majority that the Government conducted a Fourth Amendment search when it physically invaded Jones’s personal property to gather information. Id. Justice Sotomayor thus found it unnecessary to address the issue of whether Jones's reasonable expectations of privacy had been violated. Nonetheless, Justice Sotomayor indicated that she agreed with Justice Alito’s conclusion that, "at the very least, 'longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.’ ” Id. at -, 132 S.Ct. at 955. Thus, at least five Justices reasoned that prolonged GPS monitoring violates an individual’s reasonable expectation of privacy.

. We find it appropriate to address this issue because, in arguing this case, both parties focused on the application of the Katz "reasonable expectation of privacy” test. At the time this case was argued, the United States Supreme Court had not yet decided Jones.

. Prior to Jones, courts that were faced with the issue of whether the use of a GPS device to monitor an individual's movements was a Fourth Amendment search applied the Katz "reasonable expectation of privacy” test. For example, two federal circuit courts held that the use of a GPS device to monitor an individual’s activities on public roads did not amount to a Fourth Amendment search under the Katz “reasonable expectation of privacy” test. See United States v. Cuevas-Perez, 640 *497 F.3d 272 (7th Cir.2011), vacated, - U.S. -, 132 S.Ct. 1534, 182 L.Ed.2d 151, 2012 WL 538289 (2012); United States v. Pineda-Moreno, 591 F.3d 1212 (9th Cir.2010), vacated, - U.S. -, 132 S.Ct. 1533, 182 L.Ed.2d 151, 2012 WL 538278 (2012). One federal appellate court reached the opposite conclusion. See Maynard, 615 F.3d 544, aff'd, Jones, 565 U.S. -, 132 S.Ct. 945.
A number of state courts held that the use of a GPS device to monitor an individual’s activities was not a Fourth Amendment search. See Devega v. State, 286 Ga. 448, 689 S.E.2d 293 (2010); Stone v. State, 178 Md.App. 428, 941 A.2d 1238 (2008); Osburn v. State, 118 Nev. 323, 44 P.3d 523 (2002); People v. Gant, 9 Misc.3d 611, 802 N.Y.S.2d 839 (N.Y.Crim.Ct.2005); State v. Johnson, 190 Ohio App.3d 750, 944 N.E.2d 270 (2010), appeal docketed, No. 2011-0033, 128 Ohio St.3d 1425, 943 N.E.2d 572 (Ohio 2011); Foltz v. Commonwealth, 57 Va.App. 68, 698 S.E.2d 281 (2010), aff'd en banc, 58 Va.App. 107, 706 S.E.2d 914 (2011); State v. Sveum, 319 Wis.2d 498, 769 N.W.2d 53 (Wis.Ct.App.2009).
Three state courts held the warrantless use of a GPS device to monitor an individual’s movement was impermissible under their respective state constitutions. See People v. Weaver, 12 N.Y.3d 433, 882 N.Y.S.2d 357, 909 N.E.2d 1195 (2009); State v. Campbell, 306 Or. 157, 759 P.2d 1040 (1988); State v. Jackson, 150 Wash.2d 251, 76 P.3d 217 (2003).

. We do not believe that the popularity of GPS technology constitutes a surrender of personal privacy. Weaver, 882 N.Y.S.2d 357, 909 N.E.2d at 1200. In his concurrence in Jones, Justice Alito accepted this proposition in concluding that the use of a GPS device to monitor of Jones's movements during a four-week period violated Jones's reasonable expectations of privacy. Jones, 565 U.S. at -, 132 S.Ct. at 964 (Alito, J., concurring). However, Justice Alito indicated that future advances in technology may influence society's expectation of privacy. He explained,
the Katz test rests on the assumption that this hypothetical reasonable person has a well-developed and stable set of privacy expectations. But technology can change those expectations. Dramatic technological change may lead to periods in which popular expectations are in flux and may ultimately produce significant changes in popular attitudes. New technology may provide increased convenience or security at the expense of privacy, and many people may find the tradeoff worthwhile. And even if the public does not welcome the diminution of privacy that new technology entails, they may eventually reconcile themselves to this development as inevitable.
Id. at 962.

. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (consent searches); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (searches of items in plain view); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (searches conducted incident to arrest); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (automobile searches).